STATE OF NEW JERSEY, RESPONDENT, v. ANTHONY M. RUFFU, Jr., PROSECUTOR.

Argued May 7, 1930—Decided May 19, 1930.

Before Justices PARKER, CAMPBELL and BODINE.

For the respondent, *Louis A. Repetto*.

For the prosecutor, *Babcock & Champion* and *Merritt Lane*.

PER CURIAM.

Anthony M. Ruffu, Jr., mayor of Atlantic City, was indicted in fourteen separate indictments charged with violations of section 32 of the Crimes act, as amended *Pamph. L.* 1907, *p.* 292. The act is as follows and the italics ours:

"32. *Any member of any* board of chosen freeholders, or any township committee, or any board of education in any school district, or any board of aldermen or common council in any city, or any *board of commissioners of any* county, township, *city,* town or borough in this state, *who shall be directly or indirectly* concerned in any agreement or contract for the construction of any bridge or building of any kind whatsoever, or any improvement whatever to be constructed or made for the public use or at the public expense, or shall be *a party to any contract or agreement, either as principal or surety, between the* county, township, *city,* town, borough, or school district, as the case may be, *and any other party, or who shall be directly or indirectly interested in furnishing any goods, chattels, supplies or property of any kind whatsoever to or for the* county, township, *city,* town, borough or school district, the *contract or agreement for which is made or the expense or consideration of which is paid by the board,*

council or committee *of which such member is a part, shall be guilty of a misdemeanor."*

The indictments fall into three groups. In the first are ten indictments containing three counts, each charging that Ruffu, while a member of the city commission and mayor of Atlantic City, did unlawfully, knowingly, wickedly, maliciously and corruptly, with evil intent for his own use and gain, furnish *property* to and for the benefit of Atlantic City in the form of a certain policy of fire insurance described at length, and that he shared in the brokerage commission paid therefor. In the second count, the policy is referred to as a supply furnished to the city. In the third count he is charged with being a party to agreements and contracts providing for the writing of certain specific insurance policies for the city. The indictments contain many allegations descriptive of the offenses intended to be charged and many words and phrases calculated to bring the offenses alleged within the provisions of the Crimes act and hence to the defendant.

The second and third groups charge like offenses. The principal point of variation is the language in which the mayor's interest in procuring the insurance policies called property and supplies is alleged.

It is argued that the statute must be strictly construed and that a policy of insurance is a chose in action and neither property, a supply or a contract. Mr. Justice Bergen, speaking for this court in *State* v. *Johnson,* 82 *N. J. L.* 330, 332, said: "It does not appear to us that it is so manifest that no judgment can be rendered on this indictment that it ought to be quashed, and we prefer to follow the rule laid down in *Proctor* v. *State,* 55 *Id.* 472, that the discretion to quash an indictment on motion will not be exercised unless upon the clearest and plainest ground, but the defendant will be left to a demurrer, motion in arrest or judgment or writ of error."

The other authorities in this state in support of the same proposition were exhaustively collected by Mr. Justice Parker in *State* v. *Riggs,* 92 *N. J. L.* 575.

Afterwards the late Mr. Justice Kalisch said, in *State* v. *Bolitho*, 103 *N. J. L.* 246 (at *p.* 253); *affirmed,* 104 *Id.* 446, the following: "An application to a Supreme Court justice for a writ of *certiorari* to remove an indictment into the Supreme Court for the purpose of moving before that tribunal to quash is addressed to the discretion of the justice. If he refuses to exercise his discretion to allow the writ the application may be made to the Supreme Court *in banc.* But the refusal of either furnishes no proper basis for an assignment of error, under proceedings by strict writ of error nor for a specification of cause for reversal in proceedings under the one hundred and thirty-sixth section of the Criminal Procedure act. It will not be out of place to state here that for more than fifty years it was the fixed practice to disallow an application for a writ of *certiorari* to remove an indictment into the Supreme Court for the purpose of moving there to quash it, unless the prosecutor of the pleas consented to its removal, or unless it appeared upon the face of the indictment that it was clearly defective in substance and a motion to quash had been made in the court of the first instance, which motion was denied."

The language of section 32 of the Crimes act is very broad and was doubtless intended to be all inclusive. The distinction between prohibiting the furnishing of materials and supplies of any kind whatsoever and the furnishing of an insurance policy is not too obvious. A policy of insurance is usually regarded as a document containing the terms of contract between an insurance company and the insured. Of course, every lawyer is aware of the fact that in the strict legal sense the policy gives rise to certain rights in action but as a physical document it has also an existence under the law. It may very well be that it falls within the legislative classification of property and supplies which a city commissioner may not be directly or indirectly interested in furnishing to the city of which he is an officer. We do not feel that the indictment is so clearly and so plainly defective that this court can grant the motion.

We are mindful that it was said in *Hammonton* v. *Elvins,* 101 *N. J. L.* 38, that "the purpose of competitive bidding was to prevent dishonesty, chicanery and fraud. It was never intended that such a course of procedure would throttle the exercise of an honest judgment within prescribed limits." However, the purpose in prohibiting a municipal officer from dealing with his municipality was not only to prevent dishonesty, chicanery and fraud, but also to prevent a person holding an office of trust from dealing with the city whose affairs were entrusted to his care and guidance.

The grand jury finding the indictments under consideration was sworn into office on January 14th, 1930. Nearly two months thereafter a challenge was interposed against four members of the grand jury on the ground of bias and prejudice. The challenge was overruled as not being within time. After the indictments were found on March 31st, 1930, three other members of the grand jury were challenged on the ground that they were public officers. These challenges were likewise overruled for the same reason. It appears that before the indictments were found, the newspapers of the locality contained various accounts of the mayor's activities in obtaining insurance upon city property in companies for which he acted as broker or in which he was interested either as an officer, stockholder or director. On March 11th, 1930,. one of the justices of this court charged the grand jury with respect to the matter, but prior to his charge the first set of challenges was interposed.

Chancellor Magie said in *State* v. *Hoffman,* 71 *N. J. L.* 285: "The rule of the common law, which requires grand juries to be *'probi et legales homini'* (2 *Hale P. C.* 154), was early supplanted in this state by legislative provisions fixing the qualifications of grand jurors. By the provisions of section 2 of the 'act relative to juries and verdicts,' passed November 19th, 1797 [*Pat. L., p.* 259], every grand juror was required to be a citizen of the state, a resident of the county, above twenty-one and under sixty-five years of age, and having freehold in lands. Lack of the required qualifications was expressly declared to be good cause of challenge.

"The requirements of a freehold qualification was eliminated with respect to both grand and petit jurors by the 'Act to abolish the freehold qualifications,' approved February 28th, 1851. *Pamph. L., p.* 93.

"The act of 1846 was repealed by section 76 of the general repealer of the revision, approved March 27th, 1874. *Rev. Stat., p.* 142. The provisions of section 2 and section 7 of that act were consolidated in section 6 of the 'Act concerning juries,' approved March 27th, 1874 [*Rev. Stat., p.* 371], the language of which is as follows:

" '6. Every person summoned as a grand juror in any court of this state, and every petit juror returned for the trial of any action or suit of a civil or criminal nature, shall be a citizen of this state and resident within the county from which he shall be taken, and above the age of twenty-one and under the age of sixty-five years; and if any person who is not so qualified shall be summoned as a grand juror or as a juror on the trial of any such action in any of the courts of this state, it shall be good cause of challenge to such juror, who shall be discharged upon such challenge being verified according to law, or on his own oath or affirmation in support thereof; provided, that no exception to any such juror on account of his citizenship, or age, or *any other legal disability* shall be allowed after he is sworn or affirmed.'

"The objection presented by the motion to quash and grounded on the lack of qualification of one of the grand jurors, because he was beyond the age of sixty-five years, which would have been good by way of challenge, came too late after the juror was sworn, and it was properly overruled by the trial court."

The grounds of challenge presented in the case at bar, however, are said not to relate to any statutory disability, and it is therefore urged that they need not be interposed before the oath is administered. The challenges here were based upon the common law grounds of prejudice, malice and the like, and would seem to fall under the saving phrase of the statute, "or any other legal disability." Mr. Chief Justice Beasley said, in *Gibbs and Stanton* v. *State, 45 N. J.*

*L.* 381: "The law affords the right to a person who is charged, or who is likely to be charged, before a grand inquest with the commission of a criminal offense, to put in challenges to individual jurors or to the array."

Mr. Justice Garrison in *State* v. *Lang,* 75 *N. J. L.* 502, purposely fails to express any opinion as to what are the rights and remedies of a person who had no opportunity to challenge a grand juror upon the common law grounds of prejudice, malice and the like.

Mr. Justice Ford said in *State* v. *Rickey,* 10 *N. J. L.* 97: "In the case of Colonel Burr, the challenges to grand jurymen were all taken before they were sworn. The case of the *State* v. *Rockafellow,* 1 *Halst.* 343, was not a challenge to the favour; it was a matter of principle challenge for want of a leading qualification required by statute; and though I subscribe to the doctrine of the court there delivered, and do not see how the court would have done otherwise, upon the facts admitted by the demurrer, it may lead to very inconvenient results, if carried a single inch beyond the precise circumstances of that very case.

"The matter is a challenge to the polls for favour, which the law always requires to be made before the juror is sworn, and here it is not made till after he has been sworn and acted. If taken at the proper time, it will only remove the juror, and allow of another in his place; but, if allowed in this shape, it will invalidate the proceedings of all the other good and unexceptionable men on the jury."

Mr. Chief Justice Beasley in *Gibbs and Stanton* v. *State, supra,* said: "This decision [State *v.* Rickey] seems to me in point in the present inquiry, for, although, in the one reported the exception set forth to the jurors was ground of challenge to the favour, and in the present instance the facts alleged constitute a principle challenge, it appears to be out of the question to differ the two cases by reason of such a lineament; both species of challenge are required, by the course of the law, to be interposed at the same time. They are triable by the same summary method, and are attended by the same result, for if they are sustained they

equally disqualify the jurors at whom they are respectively aimed."

We, therefore, think that the action of the justice of the Supreme Court in overruling the challenges was proper. They certainly came too late. The grand jury had been in session for nearly two months when the first set of challenges was interposed. "An objection by way of challenge must be made before the finding of the indictment, and according to a number of authorities before the grand jurors have been impaneled and sworn." 28 C. J. 792.

As to the challenges of March 31st, 1930, it need only be noted that the same were interposed long after the indictments were found.

The first four challenges are couched in an excess of verbiage, but the substance of the matter so far as pertinent is as follows: Grand juror Sindoni was a judgment debtor of Ruffu. Grand juror Adams was engaged in the real estate and insurance business and interested in the same company with a man named Hickman who had been a witness in an investigation concerning Ruffu. Further, one of Adams' companies had a suit pending in the District Court against a company in which Ruffu was largely interested. Grand juror Markland appeared as a witness in the investigation concerning Ruffu and had expressed the opinion that Ruffu should resign as mayor. Grand juror Cowan was employed in the department of streets of Atlantic city and had expressed his opinion of Ruffu's guilt.

The grounds of challenge are also urged as a ground for granting a motion to quash the indictment. Mr. Justice Swayze, in *State* v. *McCarthy*, 76 *N. J. L.* 300, said: "The motion to quash is ordinarily addressed to the discretion of the court, and it is upon this ground that the court sustained that procedure instead of the procedure by plea in abatement, which is more favored in other jurisdictions. Whether the court in the exercise of that discretion could refuse to grant the defendant's motion in view of the decisions of the United States Supreme Court, is a question we do not feel called upon to decide."

The court in that case thereupon quashed the indictment upon the ground that the sheriff had failed to impanel an impartial grand jury according to his oath saying: "If the grand jury is to serve its purpose of standing between the state and the citizen that it should be impartially selected and not chosen for the purpose of securing indictments." In the case before us at the time the grand jury was impaneled and sworn there was no thought upon the part of any one that the offense charged had been committed. The matter was brought to light by subsequent newspaper investigation.

There is no basis for the motion to quash on the ground that the grand jury was improperly impaneled, nor is there merit in the allegation of bias and prejudice lodged against grand jurors Sindoni, Adams, Markland and Cowan.

Mr. Justice Kalisch said in *State* v. *Bolitho,* 103 *N. J. L.* 246 (at *p.* 251); *affirmed,* 104 *Id.* 446: "In *State* v. *Spencer,* 21 *N. J. L.* 196, Chief Justice Hornblower (at *p.* 198) stated a sound legal rule to be applied when he said: 'A declaration of opinion to disqualify a juror, therefore, must be such an one as implies malice or ill-will against the prisoner, thereby showing that the person challenged does not stand indifferent between the state and him. This is the uniform language of the books and cases which are of authority under our constitution, as well as of the English courts up to the present time.' This legal rule had become firmly imbedded in the law of this state. The salutariness of the rule is luminously dealt with by Chief Justice Green in *State* v. *Fox,* 25 *Id.* 566 (commencing at page 586)."

Mr. Justice Dixon said, in *State* v. *Turner,* 72 *N. J. L.* 405: "The first reason urged in support of the motion is that the foreman of the grand jury which presented the indictment was a stockholder in the trust company (alleged to be defrauded), and another member of the jury was a stockholder and director of the same company, and that this prosecution of the defendant was authorized by a resolution of the board of directors of that company.

"In *Gibbs* v. *State, supra,* Mr. Chief Justice Beasley, in delivering the opinion of the court respecting a plea in

abatement which alleged ill-will and malice against the defendant on the part of certain of the grand jurors, and malicious misconduct in the sheriff in selecting the jury, said that upon such facts, presented in a motion to quash, the court would, in the exercise of its discretion, quash the indictment. But it is noticeable that he was there speaking of a cause of principle challenge, *propter affectum,* which does not appear in the present case. Here it is not alleged that either of the jurors took any part or was actuated by any motive in the prosecution of the defendant other than such as their public duty dictated.

"Their interest in the corporation which the defendant is charged with having attempted to defraud is the sole basis of the argument. The opinion of this court, delivered in *State* v. *Rickey, supra,* furnishes a complete answer to this contention, it being there decided that such interest did not at all affect the qualification of the juror."

Mr. Justice Swayze said in *State* v. *Pullis,* 90 *N. J. L.* 377: "The case differs from *State* v. *McCarthy,* 76 *Id.* 295, where the proof showed partiality on the part of the sheriff in selecting the grand jury, as was possible under the law as it then stood. The present charge is in the nature of a challenge to the favour of a single grand juror, and goes no further. No malice or ill-will is averred, and the present defendant was not even the rival of the foreman of the grand jury for the office he sought. The case is within the rule of *State* v. *Turner,* 72 *Id.* 404; *State* v. *Rickey,* 10 *Id.* 83, 97."

It occurs to us that the allegations of bias and prejudice are insufficient, but at all events there is nothing to indicate that any of the jurors were actuated by any private motives or took any part in procuring the indictments other than that required by their oath.

Of the other grand jurors challenged, one was a justice of the peace, one a member of the board of freeholders and another a tax collector and assessor of a neighboring township. The practice of placing the names of public officials in a jury list is, of course, not wise. It tends to interfere with the orderly course of public business. "In the absence

of statutory enactment to the contrary, the fact that a juror is a public officer does not disqualify him from serving as a grand juror." 28 *C. J.* 769.

The case of *Crawford* v. *United States,* 212 *U. S.* 183, is to the contrary. A petit juror was an employe in the postal service of the United States. The accused was a government officer. The disqualification was sustained on the ground that the juror was a servant of the United States and interested in the outcome of the litigation. The court said: "His position was that of an employe who received a salary from the United States, and his employment was valuable to him, not so much for the salary as for the prospect such employment held out for an increase in his business from the people who might at first come to his store for the purchase of stamps, &c. It need not be assumed that any cessation of that employment would actually follow a verdict against the government. It is enough that it might possibly be the case, and the juror ought not to be permitted to occupy a position of that nature to the possible injury of a defendant on trial, even though he should swear he would not be influenced by his relations to one of the parties to the suit in giving a verdict. It was error to overrule the defendant's challenge to the juror."

This reasoning is inapplicable to the facts suggested in the record before us. The grand jurors challenged long after the indictments were found were elective officers, unlike the post-office employe. Impeachment was the remedy for the removal of the justice of the peace, and the member of the board of freeholders and the tax collector would certainly not lose their positions by reason of anything they might do as grand jurors. There is in the record presented nothing to justify this court in quashing the indictments.

The application will be denied.